UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

In re

    JAMES M. VERNON,

        Debtor.
_____/

BILLY B. BRITT,

        Plaintiff,

    v.

JAMES M. VERNON

        Defendant.
_____/

NO. CIV. S-06-1358 LKK

O R D E R

        Currently pending before the court is plaintiff-appellant, Billy B. Britt's ("Britt") appeal from the U.S. Bankruptcy Court (Klein J.).  Appellant contends that the Bankruptcy Court erred when it granted defendant-appellee, James M. Vernon's ("Vernon"), motion for summary judgment on the grounds that Britt's complaint was barred under the doctrine of res judicata.

////

////

1

1

**I.**

2

**Background** [1]

3  **A.   Proceedings in U.S. District Court for the Northern District**

4       **of Texas**

5       In March of 1999, the Securities and Exchange Commission

6  ("SEC") initiated an action regarding a "fraudulent scheme to offer

7  and sell unregistered "prime bank" securities through the United

8  States." ER at 177.[2]   Robert Burr, and Benjamin Cook, along with

9  several other defendants were accused of convincing individuals to

10 invest in "private placement opportunities" in which the investor's

11 funds were allegedly pooled with other investors funds in overseas

12 debenture transactions, generating huge guaranteed monthly returns

13 with zero risk. ER 176; ER 217.

14      The case was initiated in United States District Court for the

15 Northern District of Texas.  The District Court authorized Lawrence

16 J. Warfield to be the Receiver and in this capacity, represent the

17 interests of the investors whom were defrauded.  ER 200.

18      In May of 2000, the district court authorized the Receiver to

19 institute an action to recover receivership assets.  The case was

20 known as <u>Lawrence J. Warfield as Receiver for Dennel Finance</u>

21 <u>Limited v. Robert Burr, et al</u>.

22   ─────────────

23      [1]   All facts are derived from the parties' papers and from
     the Excerpts of Record ("ER").

24

25      [2]   The details of the underlying action are complicated and,
     for the most part, not relevant to the pending appeal.  The court
     focuses only on the factual issues relevant to the resolution of
26   this appeal.

In June of 2003, the Receiver filed a supplemental complaint adding Vernon as a "relief defendant."  Vernon is an attorney who operates a private practice in Nevada City, California.  The amended complaint alleged that Vernon participated in a civil conspiracy with Robert Burr.  ER 210-239.  Specifically, the complaint alleged that Vernon assisted Burr by making fraudulent representations to Britt about Burr and the "private placement opportunities."  ER 221.  In reliance on this information, Britt wired $5 million dollars into Vernon's trust account, which Vernon held in escrow for Burr. ER 222.

Britt was the only creditor of the receivership estate and was therefore the party on whose behalf the Receiver's Supplemental Complaint was filed.  ER at 538.  The complaint states that these "relief defendants" (Vernon included) "are used only to perpetrate a fraud on Burr's victims, and have no legitimate purpose other than holding fraudulently obtained assets."  ER 223.

The Supplemental Complaint listed three claims for relief that are relevant to the pending appeal.  First, the Receiver asserted a claim for conversion, alleging that Burr and the "relief defendants" (including Vernon), "wrongfully continue to assert dominion and control over Receivership Assets."  ER 224.  Second, the Receiver asserted a claim of civil conspiracy.  The Receiver claims that Vernon and Burr made,

> false and misleading statements to Bill Britt regarding the nature, purpose, legitimacy, location, legality and earning potential for an investment, upon which Mr. Britt relied.  These false statements induced Mr. Britt to deliver $5 million to Burr, though Vernon ...

3

1      ER 225.

2      Finally, the Receiver asserted a claim for fraudulent

3 transfer.  ER 228.

4      In August of 2003, the Receiver and Vernon entered into a

5 settlement agreement of the Receivership action.  Vernon agreed to

6 pay $260,000.00 in exchange for a general release of the claims and

7 a dismissal of the claims brought by the Receiver in the

8 Supplemental Complaint.  By the terms of the settlement, the

9 $260,000.00 was to go directly to Britt.  ER 160-161.  The

10 settlement also included a "mutual release" provision:

11        [R]elease, acquit, and forever discharge the Vernon Parties
       of and from any and all liabilities, claims, remedies,

12        demands, suits or causes of action of whatsoever kind or
       character, in whole or in part, whether choate or inchoate,

13        which the Receiver Parties now have or have ever had from the
       beginning of time against the Vernon Parties arising from the

14        actions or inactions of the Vernon Parties, including all
       claims against the Vernon Parties which are based upon, or

15        arise out of the allegations set forth in the Lawsuit.

16      ER 169. The settlement was approved in September of 2003.  The

17 District Court for the Northern District of Texas thereafter

18 dismissed all claims against Vernon with prejudice.  ER at 260.

19 **B.   Proceedings before the U.S. Bankruptcy Court for the Eastern**

20        **District of California**

21      In June of 2004, Britt sued Vernon in North Carolina

22 State Court, alleging counts for fraud and conspiracy to defraud

23 and seeking to recover the same $ 5 million.  Beset by costs of

24 out-of-state litigation, Vernon filed a Chapter 7 Bankruptcy

25 petition in the Unites States District Court, Eastern District of

26 California.  See Appellee's Brief at 2.

1    In turn, Britt filed a complaint for nondischargability of
2  debt in the same court pursuant to 11 U.S.C.A.  11 U.S.C. sections
3  523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and 523(a)(6).  ER 1-8.
4  These sections of the U.S. Bankruptcy Code provide that a discharge
5  under Chapter 7 does not discharge an individual debtor from any
6  debt that was for money obtained through, among other things,
7  fraud, misrepresentation, false pretenses or false representations.
8  See 11 U.S.C.A. § § § 523(a)(2)(A); (A)(2)(b); (a)(4).
9    Britt's complaint alleged, among other things, that Vernon had
10 made several misrepresentations in an effort to induce Britt to
11 invest $5 million dollars in Burr's scheme.  Vernon told Britt that
12 Britt's money would be safe.  Based on this representation, Britt
13 forwarded $5 million dollars to Vernon.  Britt believed that the
14 funds would be managed and supervised by Vernon as part of the plan
15 with Burr.  ER 4.  Britt asserts that Vernon knowingly made
16 fraudulent misrepresentations and Britt reasonably relied on these
17 representations when he wired the $5 million dollars.  ER 5.
18    On June 6, 2006 the Bankruptcy Court ruled from the bench on
19 Vernon's Motion for Summary judgment.  The Bankruptcy Court
20 determined that the doctrine of res judicata barred Britt's
21 complaint. The Bankruptcy Court found that as a threshold matter,
22 there were no issues of material fact in dispute. ER 540.  The
23 Bankruptcy Court then applied the traditional res judicata test.
24    First, the Bankruptcy Court determined that both the action
25 in Texas and the action in California involved the same parties.
26 ER at 560.  The Bankruptcy Court specifically rejected Britt's

5

argument that Vernon was merely a "relief" defendant in the Texas action and a named defendant in the California action.   The Bankruptcy Court found that there was unity between Vernon as a defendant in Texas and Vernon as a defendant in California.

The Bankruptcy Court also found that Britt was a party in both actions.   The court explained that Britt's interests were represented by the Receiver in the Texas action and that therefore, Britt was a party in the Texas action.   The Bankruptcy Court relied on the Restatement (Second) of Judgements, Section 41 in reaching this conclusion.

Second, the Bankruptcy Court determined that the judgment in Texas constituted a final judgment rendered by a court of competent jurisdiction, that being the U.S. District Court for the Northern District of Texas.   ER at 513.   Third, the same claims were involved in both cases.   The Bankruptcy Court again relied on the Restatement (Second) of Judgements Section 24 in concluding that the allegations in both suits were the same.   Namely, in both actions, Vernon was alleged to have defrauded Britt of $5 million dollars as part of a fraud scheme orchestrated by Burr.

Britt now appeals the Bankruptcy Court's decision.

## II.

## Standard of Appellate Review

This court has jurisdiction to review proceedings of the bankruptcy court pursuant to 28 U.S.C. § 158. The district court reviews de novo a bankruptcy court's conclusions of law. Matter of Lockard, 884 F.2d 1171, 1174 (9th Cir. 1989). Findings of fact by

1  the bankruptcy judge should not be disturbed unless they are
2  clearly erroneous. Fed. R. Bank. P. 8013; see In re Perez, 30 F.3d
3  1209, 1212 (9th Cir. 1994).

### III.

### Analysis

6      Britt claims that the Bankruptcy Court erred in concluding
7  that res judicata barred his claim.  Despite the complicated nature
8  of the underlying suit, the appeal presents a straightforward
9  question: namely, whether Britt's claim in the Bankruptcy Court is
10  precluded on the grounds of res judicata by the prior action in
11  Federal Court in Texas.

12 **A.    Standard for Res Judicata**

13      The doctrine of res judicata provides that a final judgment
14  on the merits bars further claims by parties or their privies based
15  on the same cause of action. Headwaters, Inc. v. United States
16  Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005).   Thus, to
17  establish res judicata, a defendant must establish three elements:
18  (1) an identity of claims; (2) a final judgment on the merits; and
19  (3) privity between parties. Id. at 1052-53.

20      "The doctrines of res judicata...serve[s] two objectives. [It]
21  limit[s] to one the number of times a defendant can be vexed by the
22  same claim or issue and [it] promote efficiency in the judicial
23  system by putting an end to litigation." Gilbert v. Ben-Asher, 900
24  F.2d 1407, 1410 (9th Cir. 1990).   Moreover, "[t]he normal rules
25  of res judicata and collateral estoppel apply to the decisions of
26  bankruptcy courts." Katchen v. Landy, 382 U.S. 323, 334 (1966).

7

1  **B.    Identity of Claims**

2        In determining whether there is an identity of claims between

3  the first and second adjudications, "the central criterion   is

4  'whether the two suits arise out of the same transactional nucleus

5  of facts.'" <u>Frank v. United Airlines, Inc.</u>, 216 F.3d 845, 851 (9th

6  Cir. 2000) (citation omitted).   Other factors are also considered:

7          (1) whether rights or interests established in the prior
           judgment would be destroyed or impaired by prosecution of the
8          second action; (2) whether substantially the same evidence is
           presented in the two actions; (3) whether the two suits
9          involve infringement of the same right; and (4) whether the
           two suits arise out of the same transactional nucleus of
10         facts.   The last of these criteria is the most important.

11       <u>Headwaters</u>, 399 F.3d at 1052 (citing <u>Costantini v. Trans</u>

12  <u>World Airlines</u>, 681 F.2d 1199, 1201-02 (9th Cir.1982)).   Moreover,

13  "[t]he fact that res judicata depends on an 'identity of claims'

14  does not mean that an imaginative attorney may avoid preclusion by

15  attaching a different legal label to an issue that has, or could

16  have, been litigated."   <u>Tahoe Sierra Preservation Council, Inc. v.</u>

17  <u>Tahoe Regional Planning Agency</u>,  322 F.3d 1064, 1077-1078 (9th Cir.

18  2003)

19       In the case at bar, the Bankruptcy Court concluded that the

20  allegations in both the complaint filed in Texas and the complaint

21  filed in California were the same and were "all part of the same

22  transaction."  ER 537.   The Bankruptcy Court went on to explain

23  that the civil conspiracy allegations present in the Texas

24  complaint are identical to and "subsume the entire dispute" that

25  is before the court in California.   <u>Id</u>.   The Bankruptcy Court

26  specifically made reference to the Restatement (Second) of

1  Judgements, Section 24(1), which states that:

2    When a valid and final judgment rendered in an action
     extinguishes the plaintiff's claim pursuant to the rules of
3    merger or bar (see §§ 18, 19), the claim extinguished
     includes all rights of the plaintiff to remedies against the
4    defendant with respect to all or any part of the transaction,
     or series of connected transactions, out of which the action
5    arose.

6    Restatement (Second) of Judgements, § 24(1).

7        The record supports the Bankruptcy Court's finding. The record

8  reveals that the two complaints "clearly arise from the same

9  transactional nucleus of facts."  <u>Frank</u>, 216 F.3d at 851.

10       Both the complaint filed in Texas and in California pertain

11 to one transaction, namely, Britt wiring $5 million dollars to

12 Vernon's trust account for the proposed "Private Placement

13 Investment." <u>See</u> Texas Compl. ¶ 40 (ER 222); California Compl.

14 ¶ 19 (ER 4).  Both complaints allege that Vernon made false

15 representations to Britt, assuring Britt that his money would be

16 safe. Britt then relied on this misrepresentations in his decision

17 to wire the money to Vernon.   <u>See</u> Texas Compl. ¶ 38 (ER 222);

18 California Compl. ¶ 17 (ER 4). Both complaints focus exclusively

19 on the fraudulent investment scheme which Vernon participated in

20 and to which Britt fell victim.

21       Both complaints also list similar claims. Although the claims

22 have different legal titles, the allegations are identical.  For

23 example, in the California complaint, Britt's first and second

24 claim for relief is based on the allegation that Vernon obtained

25 money, property, services or an extension, renewal or refinancing

26 of credit through "<u>false pretenses, a false representation, or</u>

9

1  <u>actual fraud</u>." California Compl. ¶ ¶  31 & 33.   ER 7 (emphasis

2  added).   Britt's third claim for relief alleges that Vernon

3  "engaged in fraud or defalcation while acting in a fiduciary

4  capacity, embezzlement, or larceny." California Compl. ¶ 35.

5       Similarly, the Texas complaint alleges claims for conversion,

6  civil conspiracy and fraudulent transfer.   Within the claim for

7  civil conspiracy, the complaint alleges that Vernon "made false and

8  misleading statements to Bill Britt regarding the nature, purpose,

9  legitimacy, location, legality and earning potential for an

10 investment, upon which Mr. Britt relied."   Texas Compl. ¶ 49, ER

11 225.   The complaint goes on to alleges that Vernon unlawfully

12 exercised dominion and control over these funds."   <u>Id</u>.

13      While the titles of the California claims are distinct from

14 the titles of the claims raised in the Texas complaint, this is of

15 little import.   Rather, the court analyzes whether the two suits

16 arise out of the same transactional nucleus of facts.   <u>Tahoe Sierra</u>

17 <u>Preservation Council,</u>  322 F.3d at 1077-1078.

18      Here, it is evident that the two complaints arise out of the

19 same transactional nucleus of facts, that being the $5 million

20 dollar transfer from Britt to Vernon.   Moreover, both complaints

21 rely on "substantially the same evidence is presented in the two

22 actions [and]... involve infringement of the same right."

23 <u>Headwaters</u>,  399 F.3d at 1052.

24 **C.   Final judgment on the Merits**

25      It is well established that a "stipulated dismissal of an

26 action with prejudice in a federal district court generally

1  constitutes a final judgment on the merits" for the purposes of res

2  judicata. <u>Headwaters</u>, 399 F.3d at 1052; <u>see also</u> <u>Hells Canyon</u>

3  <u>Preservation Council v. United States Forest Serv.</u>, 403 F.3d 683,

4  686 (9th Cir. 2005) ("Final judgment on the merits" is synonymous

5  with "dismissal with prejudice.").

6      This is consistent with basic civil procedure principals.

7  Federal Rule of Civil Procedure 41(b) states that "unless the court

8  in its order for dismissal otherwise specifies, a dismissal under

9  this subdivision and any dismissal not provided for in this rule,

10 other than a dismissal for lack of jurisdiction, for improper

11 venue, or for failure to join a party under Rule 19, operates as

12 an adjudication upon the merits."  Fed. R. Civ. P. 41 (b).

13     In the case at bar, the Bankruptcy Court concluded that the

14 dismissal with prejudice of the Texas complaint as to Vernon, was

15 a final judgment for purposes of claim preclusion.  ER 534.  This

16 court agrees.  The Receiver's complaint against Vernon was clearly

17 dismissed with prejudice as part of the settlement agreement

18 between Vernon and the Receiver.  Moreover, the Texas District

19 Court specifically issued an order dismissing the entire complaint

20 against Vernon with prejudice.  As discussed above, it is well

21 established that a dismissal with prejudice constitutes final

22 judgment for purposes of res judicata.[3]

23 **D.   Privity between Parties**

24     The court next examines whether the two actions were between

25 ───────────────

26     [3] The court also notes that Britt failed to discuss this
    issue in his opening brief or reply brief.

11

1   the same parties or their privies.   " 'Privity'...is a legal
2   conclusion 'designating a person so identified in interest with a
3   party to former litigation that he represents precisely the same
4   right in respect to the subject matter involved.' " In Re
5   Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) (citations omitted).
6   See also United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003
7   (9th Cir. 1980)( "doctrine of privity extends the conclusive effect
8   of a judgment to nonparties who are in privity with parties in an
9   earlier action.").

10       As this Circuit has explained, "federal courts will bind a
11   non-party whose interests were represented adequately by a party
12   in the original suit." Schimmels,   127 F.3d at 881.   Indeed,
13   "'privity' has been found where there is a 'substantial identity'
14   between the party and nonparty, where the nonparty 'had a
15   significant interest and participated in the prior action,'; and
16   where the interests of the nonparty and party are 'so closely
17   aligned as to be 'virtually representative'". Id. (citations
18   omitted).

19       "A non-party can be bound by the litigation choices made by
20   his virtual representative," only if certain criteria are met: "[A]
21   close relationship, substantial participation, and tactical
22   maneuvering all support a finding of virtual representation;
23   identity of interests and adequate representation are necessary to
24   such a finding." Headwaters,   399 F.3d at 1053(citing Irwin v.
25   Mascott, 370 F.3d 924 (9th Cir.2004)).

26       In the case at bar, the Bankruptcy Court determined that

1   privity existed between the parties in both cases. First, the

2   Bankruptcy Court found that Vernon was a defendant in both cases.

3   The Bankruptcy Court concluded that although Vernon was named as

4   a "relief defendant" in the Texas action, the title was

5   insignificant.  The Bankruptcy Judge explained that:

6         I have never heard of that [a relief defendant] in my life.
          I have never read it in a case.  I have never read it in the
7         statutes.  I've never read it in a rule or procedure.

8         ER 525.  Britt fails to explain in his opening brief how

9   Vernon's status as a "relief defendant" in Texas versus Vernon's

10  status as a defendant in California would affect res judicata.

11  Britt also fails to cite to any cases or any facts in the record

12  which suggests that Vernon should not be considered a defendant in

13  both actions.  For these reasons, this court agrees with the

14  findings of the Bankruptcy Court.

15        Second, the Bankruptcy Court concluded that there was privity

16  between Britt and the Receiver.  The Bankruptcy Court relied on the

17  Restatement (Second) of Judgements § 41, which states in pertinent

18  part:

19        A person who is not a party to an action but who is
          represented by a party is bound by and entitled to the
20        benefits of a judgment as though he were a party. A person is
          represented by a party who is:  ....  The executor,
21        administrator, guardian, conservator, or similar fiduciary
          manager of an interest of which the person is a beneficiary
22        ...or... An official or agency invested by law with authority
          to represent the person's interests....A person represented
23        by a party to an action is bound by the judgment even though
          the person himself does not have notice of the action, is not
24        served with process, or is not subject to service of process.

25        Restatement (Second) of Judgements § 41. The Bankruptcy Court

26  determined that Britt was represented by the Receiver in the Texas

13

1   case.   The Bankruptcy Court explained:

2       He unquestionably had notice regarding the action, and
        actually participated.  The subject matter of the action was
3       within the interest of him.  That's the whole conspiracy.  I
        mean, that's the $5 million flowing out of the action.  And
4       the receiver was, you know, suing for all damages available
        in a civil conspiracy action.
5
    ER 538-539.   The record and the law support the Bankruptcy
6
    Court's conclusion.
7
        As a threshold matter, it is well established that Receivers
8
    commonly represent the interests of the investors.[4]  A receiver may
9
    be appointed on behalf of a corporation or its shareholders.   "It
10
    is a general rule that a receiver stands in the position of a
11
    representative and a protector of the interests of creditors,
12
    shareholders, and depositors, in the property in receivership."
13
    65 AM. JUR. 2d RECEIVERS § 83 citing Camerer v. California Savings &
14
    Commercial Bank of San Diego 4 Cal. 2d 159 (1935) ("It is
15
    fundamental that a liquidating receiver represents the interests
16
    of depositors and creditors.")
17
        It is presumed that a receiver will adequately represent the
18
    interests he is charged with.  Moreover, finding privity between
19
    receivers and investors is common.  For example, in S.E.C. v. TLC
20
    Investments and Trade Co., 147 F. Supp. 2d 1031 (C.D. Cal. 2001),
21
    defendant companies were accused by the Securities and Exchange
22
    Commission of engaging in a scheme of defrauding investors.  A
23

24  ————————————

25      [4] A receiver is "a disinterested person appointed by a court,
    or by a corporation or other person, for the protection or
26  collection of property that is the subject of diverse claims."
    BLACK'S LAW DICTIONARY (8th ed. 2004).

1  receiver was appointed to represent the many investors' interests.

2  Subsequently, hundreds of investors moved to either intervene as

3  plaintiffs or to compel the receiver to administer the estate as

4  a trustee.

5      In denying the investors' motions to intervene, the court

6  found that the investors were unable to show that their interests

7  were not adequately represented by the Receiver.  Id. at 1042-43.

8  In order to show inadequate representation, the shareholders would

9  have had to show divergent fundamental goals from the Receiver's.

10 Relevant to the case at bar was the court's finding that the

11 investors and Receiver shared the same "ultimate goal".  Id. at

12 1042 fn. 7.  This common goal was enough to create the presumption

13 of adequate representation and bar investors from intervening.

14     As applied to the case at bar, Britt fails to demonstrate that

15 he had different ultimate goals than the Receiver in the Texas

16 action.  This is especially true in light of the fact that he was

17 the only creditor named by the Receiver.

18     The facts in the record support also the Bankruptcy Court's

19 conclusion. First, the Texas Court specifically explained that the

20 Receiver represented not only the entity in receivership, but also

21 the interests of its creditors, such as Britt.  S.E.C. v. Cook,

22 2001 WL 256172, *2(N.D. Tex. 2001).  Second, Britt was the only

23 creditor named in the Receiver's Supplemental Complaint. ER 211-

24 234.  Third, Britt participated in the Receivership action by

25 providing various affidavits and live testimony in support of the

26 Receiver's   complaint.    These   affidavits   and   depositions

1   specifically addressed the allegations that Vernon made various

2   misrepresentations to Britt and that in reliance on these

3   misrepresentations, Britt wired $5 million dollars to Vernon. <u>See</u>

4   ER 61-89; ER 124-154, & ER 299.

5       Fourth, and perhaps most important, Britt accepted the

6   settlement proceeds from Vernon. As discussed previously, Vernon

7   settled with the Receiver and agreed to pay $260,000.00. ER 243.

8   Moreover, the approval of the settlement depended on the District

9   Court in Texas approving Britt as a creditor of the receivership

10   estate. <u>Id</u>. Ultimately, the District Court did officially find

11   that Britt was the creditor and approved the settlement agreement.

12       Based on well established case law and the facts in the

13   record, it appears that Britt's "interests were represented

14   adequately" by the receiver. <u>In re Schimmels</u>, 127 F.3d at 881.

15       In sum, this court finds ample reason to affirm the Bankruptcy

16   Court's finding that res judicata bars Britt's current complaint

17   for nondischarability. Accordingly, the decision of the Bankruptcy

18   Court is AFFIRMED.

19       IT IS SO ORDERED.

20       DATED: October 2, 2006.

21

22

23                         LAWRENCE K. KARLTON

24                         SENIOR JUDGE

                                UNITED STATES DISTRICT COURT

25

26